JUSTIN D. SANTAGATA, ESQ.  (ID 000822009)
Decotiis, FitzPatrick, Cole & Giblin, LLP
61 South Paramus Road, Suite 250
Paramus, New Jersey 07652
T: 201-928-1100
F: 201-928-0588
E: jsantagata@decotiislaw.com
Attorneys for Plaintiffs

| | |
|---|---|
| RAMAPO HUNT AND POLO CLUB, INC., STEVEN WAGNER AND MARGARET HENRY, PAUL SCIAN AND ISABELLA SCHROEDER, KATHY AND STEPHEN MURRAY, RONALD AND CINDY LANTERI, JODI AND BRUCE GROBMAN, ERIC AND BARBARA BOE, CHARLES AND CLARE BRAMMER, MARIA LUIGIA FABRIS, EDWARD AND CYNTHIA TAFARO,<br><br>      Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MAHWAH,<br><br>      Defendant. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY NEWARK VICINAGE<br><br>2:20-cv-09313<br><br>CIVIL ACTION<br><br>**FIRST AMENDED COMPLAINT FOR TAKING OF PROPERTY WITHOUT JUST COMPENSATION AND VIOLATION OF EQUAL PROTECTION** |

Pursuant to Fed.R.Civ.P. 8, Plaintiffs alleges as follows.

## PARTIES

1.     Plaintiff Ramapo Hunt and Polo Club, Inc. ("**RHPC**") is a nonprofit corporation organized under New Jersey Law as a homeowners association for 29 residential homeowners in a private residential community in Mahwah, New Jersey.

2.    Defendant Township of Mahwah ("**Mahwah**") is a municipality organized under New Jersey law, with its main address at 475 Corporate Drive in Mahwah, New Jersey.

3.    Plaintiffs Steven Wagner and Margaret Henry, Paul Scian and Isabella Schroeder, Kathy and Stephen Murray, Ronald and Cindy Lanteri, Jodi and Bruce Grobman, Eric and Barbara Boe, Charles and Clare Brammer, Maria Luigia Fabris, and Edward and Cynthia Tafaro are individual homeowners or former homeowners within the RHPC's private residential community, each owning their own parcel of property within it ("**Individual Homeowners**").

## JURISDICTION AND VENUE

4.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3) because this complaint alleges claims under 42 U.S.C. § 1983.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because the events/omissions giving rights to these claims all occurred in Bergen County, New Jersey, which is part of the Newark Vicinage of the Federal District Court for New Jersey.

## FACTUAL BACKGROUND

5.    The Ramapough Mountain Indians Inc. ("**Ramapough**") is the record owner of real property at 95 Halifax Road in Mahwah ("**Property**").

6.    The Property is located within the RHPC's private residential community and, like the rest of the community, is only accessible via a one-lane access bridge.

7.     The RHPC is responsible for the access bridge and the roads in the private residential community.

8.     Approximately 15 years ago, the RHPC paid $750,000 to replace the bridge and repair the roads in their private residential community.

9.     RHPC members pay for maintenance of the access bridge and roads in their private residential community via dues every year.

10.    The Ramapough does not contribute to the RHPC and is not a member of it.

**I.**    **The recent history of the Property**

11.    The Ramapough do not own or control an access easement to the Property.

12.    The Property is in Mahwah's "conservation zone," which permits the following principal uses: (a) public open space, including hiking, hunting, and other similar uses; (b) agricultural uses; (c) single-family detached residences; and (d) municipal facilities. "Public open space" requires that the underlying property be owned or dedicated to Mahwah, which the Property is not.

13.    In Ramapo Hunt & Polo Club Homeowner's Association, Inc. v. County of Bergen, BER-C-353-02 (N.J. Ch. Div. 2002), the Chancery Division of the New Jersey Superior Court held that the access bridge— the only means of accessing the Property— is not open to the public and is not otherwise publicly accessible.

14.    In late 2011, the Ramapough applied to Mahwah for zoning permission to construct a "longhouse to be used for prayer and community and cultural

assembly." Rather than deny the application as a non-permitted use, Mahwah allowed the application to lapse beyond 10 days, and it was purportedly approved by operation of law pursuant to N.J. Stat. Ann. § 40:55D-18. On January 19, 2012, Mahwah's then-attorney wrote a letter memorializing Mahwah's deemed approval of the application. That letter was declared attorney-client privileged and, consequently, there was no public record of any such approval for over 5 years.

15.    For the next 5 years, the Property was the subject of numerous uses and assemblies not remotely contemplated by the "conservation zone," resulting in litigation between and among the RHPC, Mahwah, and the Ramapough.

16.    On May 5, 2012, over 200 people attended an event at the Property held by the Ramapough. The access bridge became completely blocked and RHPC residents could not even access their own homes.

17.    The Ramapough held similar events in fall 2016 through spring 2017 at the Property where the invited public parked hazardously along the narrow RHPC-owned roadsides.

18.    In June 2016, the Ramapough began a "tent city" at the Property, with porta-johns, cooking, and other appliances used for everyday living.

19.    By December 2016, groups of people were living on the Property and large assemblies were common. Fires burned day and night on the Property.

## II.    Mahwah officials deny giving any approval for the Ramapough's improvements/non—permitted uses on the Property

20.    Despite Mahwah's deemed approval of the Ramapough's 2012 zoning application, on at least four separate occasions Mahwah denied any approval existed.

21.    In a response to a RHPC request for any document for approval of uses for the Property, on November 7, 2013, Mahwah's zoning officer wrote to the RHPC and said: "I have no knowledge of what you are requesting."

22.    On November 12, 2013, Mahwah's zoning officer wrote to the RHPC and said: "I am not aware of any approvals for anything."

23.    On November 18, 2013, Mahwah's construction code official wrote to the RHPC: "[t]hey have not applied for any permits." This was false; the Ramapough had applied for and were granted a "permit" at the time of the construction code official's writing.

24.    On November 26, 2013, Mahwah's construction code official wrote to the RHPC and said: "I inspected the property...I do not see any violations or need for permits."

25.    Mahwah's secret approval to the Ramapough in 2012 was only revealed to the RHPC in 2017, and then only by accident via a posting on the Ramapough website, not by Mahwah itself. The RHPC immediately objected to the approval.

**III.    After Mahwah's secret approval is revealed, Mahwah revokes it**

26.    In September 2017, after the secret approval was revealed, Mahwah rescinded the prior "zoning permit" issued to the Ramapough for the Property, which had been hidden from the RHPC and the public for 5 years.

**IV.    The dueling litigation over the Property**

27.    On September 22, 2017, the RHPC filed a complaint in New Jersey Superior Court to enforce the zoning for the Property. Mahwah filed a similar

complaint and the two complaints were consolidated under the docket BER-L-3189-17.

28.     In 2018, the Ramapough sued Mahwah and the RHPC in federal court, alleging violation of the Religious Land Use Protection Act, docketed 2:18-cv-09228.

29.     Mahwah settled the federal litigation and BER-L-3189-17 (collectively "**Litigation**") on the eve of trial in the latter. Trial continued between the RHPC and the Ramapough in the first week of May 2019.

30.     On May 9, 2019, the Mahwah Council held a meeting where it discussed the proposed settlement of the Litigation in closed session only. Prior to the meeting, the RHPC filed a lengthy written objection to the settlement with the Mahwah Council alleging the proposed settlement was illegal.

31.     At the May 9, 2019 meeting, the Mahwah Council deliberated in closed session on the proposed settlement of the Litigation made changes, and "approved" a resolution, without any public hearing as to the specifics. The settlement, with new revisions, was executed June 26, 2019.

32.     At the May 9, 2019 Mahwah Council meeting, multiple RHPC members appeared at the meeting reciting their lengthy written objection to the proposed settlement of the Litigation and alleging that it was a taking of the RHPC's access bridge and roads. The Mahwah Council adopted the proposed settlement over the RHPC's written and oral objections and reached a final determination to adopt the settlement.

33.     As a resolution of a zoning dispute, the proposed settlement had to be debated in public and subject to a public hearing under New Jersey law. As a change in zoning, the settlement had to be referred to the Mahwah Planning Board, which it definitely was not.

34.     On May 3, 2019, BER-L-3189-17 was dismissed after a bench trial; the New Jersey Superior Court held that the zoning violations on the Property had supposedly been abated.

## V.     The settlement of the Litigation is a taking of Plaintiffs' property

35.     The Property is currently designated for a "Green Acres" tax exemption under New Jersey law, meaning it must be "available to the general public or some portion thereof for recreation and conservation purposes," pursuant to N.J.A.C. 7:35-1.3 and 1.4.

36.     Mahwah has approved the "Green Acres" tax exemption pursuant to N.J.A.C. 7:35-1.6(d) since at least 2014 based on its apparent acceptance that the access bridge and roads could be used by the "general public" to access the Property For example, the 2014 application represented the Property could be "accessed by Halifax road." Once Halifax Road becomes the RHPC's access bridge, the road(s) after that is owned by the RHPC, not Mahwah. The 2017 application contained a map appearing to show a footpath connecting the RHPC's access bridge to the Property.

37.     The settlement of the Litigation was only provided to the RHPC in early July 2019, despite repeated public record requests by the RHPC. It was executed nearly two months after the May 9, 2019 Mahwah Council meeting when it was

supposedly approved and after the conclusion of the bench trial in BER-L-3189-17 on May 3, 2019.

38.    The settlement of the Litigation provides as follows, in relevant part:

- The Ramapough are permitted to use the Property as a "place of assembly"
- The Ramapough are permitted unlimited gatherings of up to 35 people on the Property without notice
- The Ramapough are not just permitted to but "will have" 20 to 25 gatherings per year of 35 to 100 people
- The Ramapough are not just permitted to but "will have" 1 to 3 gatherings per year of 100 to 150 people
- The settlement is personal to the Ramapough and if the Property is sold no further owner can rely upon the settlement for use of the Property, contrary to basic zoning principles in New Jersey.

39.    While the settlement of the Litigation refers to the Property for use as a "place of assembly," Mahwah's approval of a "Green Acres Tax Exemption" for the Property requires that such "place of assembly" be available to the "general public." The settlement memorializes the public purpose of the Property and the taking of the RHPC's access bridge and roads.

40.    For the prior nearly 40 years, the Property was part of a private residential community, which is memorialized in the original application and subsequent application to the Mahwah Planning Board. A 1982 Mahwah Planning Board resolution recognizes the access bridge as the property of the RHPC and that Mahwah's only right of access is via an emergency easement, not for general public use.

41.    The "conservation zone" permits "public open space," including hiking, hunting, and "other similar uses." It does not permit invited public gatherings of 100s

of people, with tents and cookouts, totaling over a minimum of 12,000 people per year (35 a day multiplied by 365 days). The other permitted uses in the "conservation zone" are non-public and do not compare in any way to the use(s) permitted by the settlement of the Litigation. "Public open space" is defined to require that the Property be owned or dedicated to Mahwah, which it is not; if the Property were owned or dedicated to Mahwah, Mahwah's direct use of it for "public open space" would clearly be a taking of the RHPC's access bridge and roads. Another permitted use in the "conservation zone" is a "municipal facility"; again, if *Mahwah's* vehicles and employees were constantly traversing the RHPC's access and bridge and roads, the taking would be even more self-evident.

42.    "Place of assembly," the use referred to in the settlement of the Litigation, was only defined in Mahwah's zoning nearly *6 months after the settlement*:

> ["Place of assembly"] shall mean any structure or building devoted to the gathering together of persons for a common reason, such as legislative, religious, civic, educational, recreational or social purposes and that is used as the regular site for traditional services, meetings and/or gatherings of an organized body or community, which services, meetings or gatherings are presided over by the ordained or otherwise officially recognized leader of that body or community. Exempted are incidental, temporary or sporadic meetings attended by a small number of persons such that the character of the zone district in which it is located is not compromised for occupants of properties in that area.

"[P]lace of assembly" clearly does not encompass over 12,000 people per year at one property in a private residential community accessibly only by an access bridge. The addition of "place of assembly" to Mahwah's zoning is a haphazard attempt to cover-up the taking of Plaintiffs' property effected by the settlement of the Litigation. Mahwah added "place of assembly" as a "conditional use" in every zone in Mahwah,

meaning a property can only be used in that manner under the New Jersey Municipal Land Use Law: (i) if it meets all conditions of the use and is approved by the Mahwah Planning Board; or (ii) any deviation from the conditions of the use are granted a variance by the Mahwah Zoning Board. Neither of these requirements occurred. In fact, one of the required conditions for "place of assembly" is that it be located on what Mahwah defines as a "major arterial" road, a "minor arterial road," or a "collector road." Mahwah specifically lists what roads meet those definitions and Halifax Road is not listed, let alone the *private portion owned by the HOA*. Halifax Road would not meet the definitions anyway. Thus, Mahwah's own haphazard attempt to cover-up the taking of Plaintiffs' property has only created evidence for Plaintiffs: the reason a "place of assembly" must be located on a certain, defined type of road is that many areas in a community are not equipped or designed to deal with the type of activity generated by a "place of assembly." This is no more true than with the unique, isolated, and private residential community in which Plaintiffs live.

43.    The settlement of the Litigation is a taking of the RHPC's private residential community and vastly changes the very nature of that community. The settlement of the Litigation has further damaged the Individual Homeowners and caused a substantial diminution in the value of the homes, including from loss of the private residential community. For example:

- The Individual Homeowners estimate their homes have lost at least 10% of their fair market value

- The intangible nature of a private residential community is no different than a riparian right, which is compensable as a taking

- The promise of a private residential community is a covenant in the deed of the Individual Homeowners and the Homeowners paid a premium for it, which has now been taken

- For most of the Individual Homeowners, if not all, the loss in fair market value diminishes or wipes out hundreds of thousands of dollars in improvements they have made to their homes since their purchase

- Other homeowners have had contracts to sell their home derailed because of the settlement and how it changes the RHPC's private residential community

- One of the Individual Homeowners, Ms. Luisa-Fabris, sold her home after the settlement of the Litigation at substantially less than she paid for it many years before, a loss attributable to the settlement.

## VI.    Mahwah took only the benefit(s) from the Settlement of the litigation and imposed the burden on the RHPC

44.    Crucially, the original proposed settlement of the Litigation had three parties: the Ramapough, Mahwah, *and the RHPC*. The original proposed settlement required Mahwah to take ownership of and responsibility for the RHPC's access bridge and roads. In exchange, the Ramapough received the right to use the Property for "public assembly." As Mahwah itself has conceded in writing, Mahwah obtained a large benefit and facilitated a public purpose by granting the Ramapough such right and the eventual "place of assembly": avoiding substantial exposure for violation of the Religious Land Use Protection Act. That large benefit was supposed to be conditioned on Mahwah taking ownership and responsibility for the RHPC's access bridge and roads, an extremely large cost and liability that would otherwise have to be borne by the RHPC, as it now is again. In other words: the RHPC's access bridge

and roads were being conveyed to Mahwah for the benefit of the public and thereby avoiding *any exposure at all to Mahwah* under the Religious Land Use Protection Act.

45.    Mahwah simply "redlined" the RHPC out of the proposed three-way settlement of the Litigation, almost literally just accepting everything but the ownership and responsibility for the RHPC's access bridge and roads. The settlement is substantively identical, nearly word-for-word and even in form, to the proposed three-way settlement except for the excision of the ownership and responsibility for the RHCP's access bridge and roads and the change from "public assembly" to "place of assembly."

46.    Thus, Mahwah accepted all the benefits of the proposed three-way settlement of the Litigation but imposed the burden it was supposed to undertake in exchange for those benefits *onto the RHPC—* the continued ownership and responsibility for the RHPC's access bridge and roads. Plaintiffs continue to pay the burden that should be borne by Mahwah and the public at large.

## VI.    Post-settlement activities at the Property have confirmed the taking of Plaintiffs' property

47.    Since the settlement of the Litigation, Mahwah has continually memorialized in writing (via emails with the Ramapough) that the settlement permits over 12,000 people per year to visit the Property, knowing that is only possible with the RHPC's access bridge and roads. Mahwah has been unequivocal in writing that the settlement permits exactly what it says. For example:

(a)    On August 28, 2019, Mahwah's counsel stated in writing to the Ramapough:

First, with respect to the event to be conducted at 95 Halifax Road, same comports with the terms of the Settlement Agreement, with regard to the number of anticipated attendees. The Agreement requires notice for events in which it is anticipated between 50 and 150 individuals would attend, and your e-mail serves as the notice required pursuant to the terms of the Agreement.

(b)     On March 16, 2021, Mahwah's counsel stated in writing that an "event…with at most approximately 50-75 persons" was "in conformance with the [Settlement]"

(c)     On June 9, 2021, Mahwah's counsel stated in writing that an "event" with "150 attendees" was "in conformance with the [Settlement]."

48.     Since the settlement of the Litigation, the Ramapough have held a motorcycle rally with at least 30 motorcycles storming across the access private bridge and parking on the RHPC's private roads. Mahwah received written acknowledgement from the Ramapough after-the-fact that there may have been "50-60" attendees at the motorcycle rally, most with their own motorcycles (presumably).

49.     The motorcycle rally was set up by public invitation, including on social media platforms:



50.    Here is a picture of the motorcycles blocking the RHPC's access bridge.



51.    In late 2021, Mahwah permitted the Ramapough to send large buses of school children to the Property. The buses could barely traverse the RHPC's access bridge because it was never intended for that type of traffic:



52.    The RHPC's zoning and engineering experts have already opined that the settlement of the Litigation permits 3 to 4 times more than the expected traffic in the RHPC's private residential community and that the access bridge should be two lanes, not one, for that level of traffic.

53.    Mahwah's unequivocal writings to the Ramapough *before* the settlement of the Litigation confirm what is clearly permitted *after*. Mahwah's pre-settlement writings said: "assembly for any purpose" is not "authorized"; "religious and cultural gatherings are not a permitted use"; "any event that is to occur at [the Property] would be contrary to the zoning; and "assembly is contrary to the Township's Land Development Ordinance." Therefore, "there is no question about how the regulations at issue apply to the particular land in question," Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 739 (1997), because Mahwah's post-settlement writings continually confirmed the exact opposite of their pre-settlement writings. This is only further confirmed by Mahwah's haphazard and self-defeating attempt to impose a "place of assembly" as a conditional use in all zones in Mahwah. Even under Mahwah's haphazard and self-defeating attempt, a "place of assembly' is not permitted at the Property under the zoning.

54.    If Mahwah had conducted a proper rezoning, rather than illegally "spot zoning" the Property via the settlement of the Litigation, it would be even more obvious that the RHPC's access bridge and roads had been converted for a public purpose for a "place of assembly" because the access bridge and roads are part of the "conservation zone." Under a proper rezoning, Mahwah would have had to provide

notice to at least the RHPC because the Property is within 200 feet of the RHCP's access bridge and roads. Even Mahwah's haphazard creation of a "place of assembly" condition use required notice to the RHPC because its definition and conditions clearly relate to the "place of assembly" *at the Property*. Suffced to say: no notice was given and Mahwah continues to try to sweep away the constitutional debacle it has created (and continues to make worse).

## COUNT ONE
## TAKING OF PROPERTY
### (42 U.S.C. § 1983; Fifth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment)

55.    Plaintiff incorporates paragraphs 1 through 54 above as if fully set forth in this count.

56.    The Supreme Court reiterated in <u>Knick v. Township of Scott</u>, 139 S. Ct. 2162, 2170 (2019), that a "property owner has a claim for violation of the Takings Clause as soon as a government takes his property for public use [or purpose] without paying for it."  This includes an "inverse condemnation" claim where the property, or the value of property, has been "taken in fact by the governmental defendant."

57.    After <u>Knick</u>, an aggrieved property owner may file a takings claim directly in federal court without first exhausting state court remedies, so long as the taking is "final" and the aggrieved property owner has exhausted any objection to the governmental entity exacting the taking.

58.    The RHPC objected to the proposed settlement of the Litigation on May 9, 2019, in writing and orally. Over this objection, the Mahwah Council executed the settlement and subsequently administered it in writing with the Ramapough

confirming, without doubt, its interpretation, purpose, and effect. In doing so, the Mahwah Council, of necessity, took the RHPC's access bridge and abutting private roads for public use and purpose both literally and by accepting only the benefits of the proposed three-way settlement and imposing the burden(s) on the RHPC.

59.    The settlement of the Litigation is a taking for several non-exhaustive reasons.

- First, neither Mahwah nor the Ramapough pay any dues to the RHPC for use of the access bridge or the roads, nor did either of them commit any funds for the $750,000 replacement of the access bridge and roads.

- Second, the RHPC is a private residential community. While it is part of the "conservation zone," the RHPC maintains only the permitted use of single-family residential homes, a non-public use.  The settlement of the Litigation changes the entire nature of the private residential community and effectively deletes the promise of a private residential community from the deeds of Individual Homeowners and eliminates Plaintiffs' "right to exclude," a hallmark property right under the Fifth Amendment

- Third, the vastly increased use of the access bridge and the roads is a taking in and of itself. The bridge and roads were built and are maintained for use by a small group of homeowners, not for gatherings of hundreds of people many times a year

- Fourth, the settlement substantially decreases the value of the property of Individual Homeowners and the ability to re-sell their property

- Fifth, the settlement exposes the RHPC to serious liability for the invited public, over which the RHPC now has no control

- Sixth, the settlement violates "the Fifth Amendment's…design[] to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960)

- Seventh, the RHCP's access bridge and roads are intended for a private residential single-family community, with each single-family home expected to average approximately 10 trips in/out per day pursuant to N.J.A.C. 5:21-4.1; the settlement of the Litigation permits 3 times that amount for the Property per day and over 4 times the yearly expected amount for a single-family home.

- Eighth, the definition and conditions for the conditional use of a "place of assembly" in Mahwah's zoning, created long after the settlement of the Litigation, *admit* the very constitutional problems that the settlement of the Litigation creates: Plaintiffs' unique, isolated, and private residential community is not designed (and never was designed) for what the settlement provides to the RHPC. This is why Mahwah's zoning, but not the settlement, limits a "place of assembly" to certain defined roads that are both *public* and able to accommodate the expected activity of a "place of assembly."

60.    The taking of the RHPC's access bridge and roads is the "foreseeable result" of the settlement of the Litigation. Arkansas Game & Fish Comm'n, 56 U.S. 23, 39 (2012). Indeed, the proposed three-way settlement among the RHPC, Mahwah, and the Ramapough forecloses any contrary determination; it was *dependent upon Mahwah taking the RHPC's access bridge and roads*. In the settlement of the Litigation, Mahwah simply accepted the benefit but not the burden.

61.    The settlement of the Litigation causes the following reasonably calculable damages to Plaintiffs: (a) increased maintenance cost for the access bridge and the roads; (b) vastly reduced lifespan for the access bridge; (c) increased trash and other indicia of vastly increased use of the area; (d) potential liability; (e) decreased home values; and (f) loss of the premium they paid to live in a private residential community with the "right to exclude."  The current value of the RHCP's access bridge and roads is nearly 2 million dollars; the cost for either Mahwah or the

Ramapough to build their own access bridge is nearly 2 million dollars by itself. Mahwah avoided that cost both for itself and the Ramapough by simply co-opting the RHCP's access bridge and roads instead.

**COUNT TWO**
**EQUAL PROTECTION ("CLASS-OF-ONE")**
**(42 U.S.C. § 1983; Fourteenth Amendment to the United States Constitution)**

62.    Plaintiffs incorporate paragraphs 1 through 61 above as if fully set forth in this count.

63.    The Fourteenth Amendment to the United States Constitution includes so-called "class-of-one" claims where a plaintiff alleges that he or she is treated differently than someone similarly situated, the differential treatment is intentional, and there is no rational basis for the specialized classification. Unlike other equal protection claims, a "class-of-one" claim does not require that the plaintiff be part of a constitutionally-protected class.

64.    "Spot zoning" is a species of a "class-of-one" claim. The settlement of the Litigation is "spot zoning," without even the pretense of following the necessary process for zoning to begin with. This is only further proven by Mahwah's haphazard attempt to cover-up its failure to follow the zoning process with the adoption of a "place of assembly" condition use, *which does not even permit what is granted in the settlement.*

65.    The settlement of the Litigation intentionally treats Plaintiffs differently than the Ramapough, even though they could not be more similarly situated. But to be clear: this complaint makes no allegation against the Ramapough,

seeks no relief from the Ramapough, and does not seek invalidation of the settlement. The Ramapough will not be affected by any relief demand in this complaint and it has stated in writing that it will not participate in this litigation and is not necessary to disposition.

66. For nearly 5 years, Mahwah had a secret arrangement with the Ramapough that permitted the Ramapough to use the Property in violation of zoning for the "conservation zone" and without the necessary approvals that any other property owner is subject to, including Plaintiffs. This is not the fault of the Ramapough. It was Mahwah, not the Ramapough, that hid the secret approval and it was Mahwah, not the Ramapough, that repeatedly denied its existence for over 5 years.

67. The RHPC and the Ramapough are both part of the "conservation zone," yet no other property owner could possibly have invited public gatherings of hundreds of people many times a year, as permitted to the Ramapough under the settlement of the Litigation. Mahwah's creation of a "place of assembly" conditional use inexplicably *admits this* because conditions cannot be met by any property owner in Plaintiffs' private residential community; "place of assembly" exists only for the Ramapough via the settlement.

68. The settlement of the Litigation outright concedes the "class-of-one" claim because it specifically states that the Ramapough, and only the Ramapough, are entitled to the benefit of the settlement. This is contrary to the basic zoning

principle in New Jersey that a zoning approval runs with the land. It would mean that the RHPC could buy the Property and not get the benefit of the settlement.

69.    Plaintiffs are damaged by the "class-of-one" violation for the same reasons as the takings claim.

## DEMAND FOR RELIEF

Pursuant to counts one and two, Plaintiffs demand relief as follows:

(a)    Compensatory and consequential damages

(b)    All additional damages available in takings and equal protection jurisprudence

(c)    Pre-judgment interest from at least May 9, 2019

(d)    Attorneys' fees and costs of pursuant to 42 U.S.C. § 1988

(e)    Such other relief as the court deems equitable and just.

## JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Plaintiffs demand trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO L.CIV.R.11.2

I certify that the matter in controversy is not the subject of any other action pending or contemplated, except 2:18-cv-09228 (D.N.J. 2018) and BER-L-6223-19 (N.J. Law Div. 2019). BER-L-6223-19 is a complaint by a pro se against Mahwah; Plaintiffs are not involved. The pro se has certified that his complaint was filed without involvement or sponsor by the RHPC and that he is acting separate and apart from the RHPC. I further certify that I am aware of no other parties who should be joined in this matter. Mahwah asserts that the Ramapough should be joined but

cannot explain how or why joinder is required under Fed.R.Civ.P. 19. Complete relief can be accorded the parties without such joinder and a final judgment here will not affect the Ramapough's rights, as explicitly set forth above. Mahwah's assertion that the Ramapough should be joined appears merely to be an attempt to interfere with settlement of 2:18-cv-09228 between the RHPC and the Ramapough and to create further chaos that Mahwah mistakenly perceives to be to its advantage. The Ramapough have said in writing that it does not want to be joined and its participation is not necessary.

Dated: January 14, 2022

JUSTIN D. SANTAGATA, ESQ.